# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

## CHAPTER 13 PLAN
## AND RELATED MOTIONS

Name of Debtor(s): Mark Joseph Criscuolo          Case No: 09-14063

This plan, dated <u>May 21, 2009</u>, is:

     ☑ the *first* Chapter 13 plan filed in this case.

     ☐ a modified plan, which replaces the plan dated _____

         Date and Time of <u>Modified Plan</u> Confirmation Hearing:
         _____

         Place of <u>Modified Plan</u> Confirmation Hearing:
         _____

     The plan provisions modified by this filing are:

     Creditors affected by this modification are:

**NOTICE: YOUR RIGHTS WILL BE AFFECTED. You should read these papers carefully. If you oppose any provision of this plan, or if you oppose any included motions to (i) value collateral, (ii) avoid liens, or (iii) assume or reject unexpired leases or executory contracts, you MUST file a timely written objection.**

**This plan may be confirmed and become binding, <u>and the included motions in paragraphs 3, 6, and 7 to value collateral, avoid liens, and assume or reject unexpired leases or executory contracts may be granted,</u> without further notice or hearing unless a written objection is filed not later than ten (10) days prior to the date set for the confirmation hearing and the objecting party appears at the confirmation hearing.**

The debtor(s)' schedules list assets and liabilities as follows:

     Total Assets:  21,400.00
     Total Non-Priority Unsecured Debt: 282,137.00
     Total Priority Debt: 4,644.00
     Total Secured Debt: 470,591.00

1.  **Funding of Plan.** The debtor(s) propose to pay the trustee the sum of $ 397.30 _____ per
    __month___ for _60_ months. Other payments to the Trustee are as follows:
    _____. The total amount to be paid into the plan is
    $ 23,838.22 _____.

2.  **Priority Creditors.** The Trustee shall pay allowed priority claims in full unless the creditor agrees
    otherwise.

    **A.  Administrative Claims under 11 U.S.C. § 1326.**

    1.  The Trustee will be paid 10% of all sums disbursed except for funds returned
        to the debtor(s).
    2.  Debtor(s)' attorney will be paid $ 2,500.00 _____ balance due of the total fee
        of $ 3,500.00 _____ concurrently with or prior to the payments to remaining
        creditors.

    **B.  Claims under 11 U.S.C. §507.**

    The following priority creditors will be paid by deferred cash payments pro rata with
    other priority creditors or in monthly installments as below, except that allowed claims
    pursuant to 11 U.S.C. § 507(a)(1) will be paid prior to other priority creditors but
    concurrently with administrative claims above:

| Creditor | Type of Priority | Estimated Claim | Payment and Term |
|---|---|---|---|
|  |  |  |  |

3.  **Secured Creditors and Motions to Value Collateral.**

    This paragraph provides for claims of creditors who hold debts that are secured by real or personal
property of the debtor(s) but (a) are not secured solely by the debtor(s)' principal residence and (b) do not
have a remaining term longer than the length of this plan.

    **A.  Claims to Which § 506 Valuation is NOT Applicable.** Claims listed in this subsection
    consist of debts secured by a purchase money security interest in a motor vehicle acquired for the
    personal use of the debtor for which the debt was incurred within 910 days of the filing of the
    bankruptcy petition, or if the collateral for the debt is any other thing of value, the debt was incurred
    within 1 year of filing. See § 1325(a)(5). After confirmation of the plan, the Trustee will pay to the
    holder of each allowed secured claim the monthly payment in column (f) based upon the amount of
    the claim in column (d) with interest at the rate stated in column (e). **Upon confirmation of the
    plan, the interest rate shown below will be binding unless a timely written objection to
    confirmation is filed and sustained by the Court.** Payments distributed by the Trustee are
    subject to the availability of funds.

| (a) Creditor | (b) Collateral | (c) Purchase Date | (d) Est Claim Amt | (e) Interest Rate | (f) Monthly Paymt & Estimate Term** |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

    **B.  Claims to Which §506 Valuation is Applicable.** Claims listed in this subsection consist of
    any claims secured by personal property not described in Plan paragraph 3.A. After confirmation of
    the plan, the Trustee will pay to the holder of each allowed secured claim the monthly payment in
    column (f) based upon the replacement value as stated in column (d) or the amount of the claim,
    whichever is less, with interest at the rate stated in column (e). The portion of any allowed claim that
    exceeds the value indicated below will be treated as an unsecured claim. **Upon confirmation of the
    plan, the valuation and interest rate shown below will be binding unless a timely written**

**objection to confirmation is filed and sustained by the Court.** Payments distributed by the Trustee are subject to the availability of funds.

| (a) Creditor | (b) Collateral | (c) Purchase Date | (d) Replacement Value | (e) Interest Rate | (f) Monthly Paymt & Estimate Term** |
|---|---|---|---|---|---|

**** THE MONTHLY PAYMENT STATED HERE SHALL BE THE ADEQUATE PROTECTION PAYMENTS PURSUANT TO 1326(a)(1)(C) TO THESE CREDITORS UNLESS OTHERWISE PROVIDED IN PARAGRAPH 11 OR BY SEPARATE ORDER OF THE COURT.**

    **C.**    **Collateral to be surrendered.** Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a non-priority unsecured claim. The order confirming the plan shall have the effect of terminating the automatic stay as to the collateral surrendered.

| Creditor | Collateral Description | Estimated Total Claim | Full Satisfaction (Y/N) |
|---|---|---|---|
| John Deere | Home Lawn Tractor | $6,500.00 | |

**4.**    **Unsecured Claims.**

    **A.**    **Not separately classified.** Allowed non-priority unsecured claims shall be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claims. Estimated distribution is approximately __3.00__ %. If this case were liquidated under Chapter 7, the debtor(s) estimate unsecured creditors would receive a dividend of approximately __3.00__ %.

    **B.**    **Separately classified unsecured claims.**

| Creditor | Basis for Classification | Treatment |
|---|---|---|

**5.**    **Long Term Debts and Claims Secured by the Debtor(s)' Primary Residence.**

Creditors listed below are either secured by the debtor(s)' principal residence or hold a debt the term of which extends beyond the term of this plan.

    **A.**    **Debtor(s) to pay claim directly.** The creditors listed below will be paid by the debtor(s) pursuant to the contract without modification, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| SunTrust Mortgage | House | $3,450.00 | $13,800.00 | 6.125 | 360 | $0.00 |

*Arrearage at end with increased term.

**B.** **Trustee to pay the contract payments and the arrearages.** The creditors listed below will be paid by the Trustee the regular contract monthly payments during the term of this plan. The arrearage claims, if any, will be cured by the Trustee by payments made either pro rata with other secured claims or by fixed monthly payments as indicated below.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Interest Rate | Term for Arrearage | Monthly payment |
|----------|-----------|-------------------------|---------------------|---------------|--------------------|-----------------|
|          |           |                         |                     |               |                    |                 |

**6.** **Executory Contracts and Unexpired Leases.** The debtor(s) move for assumption or rejection of the executory contracts and leases listed below.

    **A.** **Executory contracts and unexpired leases to be rejected.** The debtor(s) reject the following executory contracts.

| Creditor | Type of Contract |
|----------|------------------|
|          |                  |

    **B.** **Executory contracts and unexpired leases to be assumed.** The debtor(s) assume the following executory contracts. The debtor agrees to abide by all terms of the agreement. The Trustee will pay the pre-petition arrearages, if any, through payments made pro rata with other priority claims or on a fixed monthly basis as indicated below.

| Creditor | Type of Contract | Arrearage | Monthly Payment for arrears | Estimated cure period |
|----------|------------------|-----------|----------------------------|----------------------|
|          |                  |           |                            |                      |

**7.** **Motions to Avoid Liens.**

    **A.** **The debtor(s) move to avoid liens pursuant to 11 U.S.C. § 522(f).** The debtor(s) move to avoid the following judicial liens and non-possessory, non-purchase money liens that impair the debtor(s)' exemptions. **Unless a written objection is timely filed with the Court, the Court may grant the debtor(s)' motion and cancel the creditor's lien.** If an objection is filed, the Court will hear evidence and rule on the motion at the confirmation hearing.

| Creditor | Collateral | Exemption Basis | Exemption amount | Value of Collateral |
|----------|-----------|-----------------|------------------|---------------------|
|          |           |                 |                  |                     |

    **B.** **Avoidance of security interests or liens on grounds other than 11 U.S.C. § 522(f).** The debtor(s) have filed or will file and serve separate pleadings to avoid the following liens or security interests. The creditor should review the notice or summons accompanying such pleadings as to the requirements for opposing such relief. The listing here is for information purposes only.

| Creditor | Type of Lien | Description of Collateral | Basis for Avoidance |
|----------|--------------|---------------------------|---------------------|
| IndyMac | Second Trust | 14416 Club House Road, Gainesville, VA | Unsecured |

**8.    Treatment of Claims.**

- All creditors must timely file a proof of claim to receive payment from the Trustee.
- If a claim is scheduled as unsecured and the creditor files a claim alleging the claim is secured but does not timely object to confirmation of the plan, the creditor may be treated as unsecured for purposes of distribution under the plan.  This paragraph does not limit the right of the creditor to enforce its lien, to the extent not avoided or provided for in this case, after the debtor(s) receive a discharge.
- If a claim is listed in the plan as secured and the creditor files a proof of claim alleging the claim is unsecured, the creditor will be treated as unsecured for purposes of distribution under the plan.

**9.    Vesting of Property of the Estate.** Property of the estate shall revest in the debtor(s) upon confirmation of the plan.  Notwithstanding such vesting, the debtor(s) may not sell, refinance, or encumber real property without approval of the court.

**10.    Incurrence of indebtedness.**  During the term of the plan, the debtor(s) shall not voluntarily incur additional indebtedness in an amount exceeding $5,000 without approval of the court.

**11.    Other provisions of this plan:**

**Signatures:**

**Dated:**

_____
**Debtor**

**Debtor's Attorney**

_____
**Joint Debtor**


**Exhibits:** **Copy of Debtor(s)' Budget (Schedules I and J);**
**Matrix of Parties Served with plan**

Certificate of Service

I certify that on _June 1, 2009_____, I mailed a copy of the foregoing to the creditors and
parties in interest on the attached Service List.

_____
Signature

_7926 Jones Branch A. #930_
Address

_Mc Lean, VA 22002_

_703-506-9440_
Telephone No.

SERVICE LIST


5TH 3RD BK
38 FOUNTAIN SQ PL
CINCINNATI, OH 45202


ACS/B OF A
ACS EDUCATION SVCS
UTICA, NY 13501


AMEX
P.O. BOX 981537
EL PASO, TX 79998


BACHOMELOANS
450 AMERICAN ST
SIMI VALLEY, CA 93065


BK OF AMER
4060 OGLETOWN/STAN
NEWARK, DE 19713


BK OF AMER
475 CROSSPOINT PKW
GETZVILLE, NY 14068


BMW FIN SVC
5515 PARK CENTER C
DUBLIN, OH 43017


BRAZOS
501 BLEECKER ST
UTICA, NY 13501


BRAZOS
P.O. BOX 16319
AUSTIN, TX 78761


CARECRD/GEMB
PO BOX 981439
EL PASO, TX 79998


CHASE
BANK ONE CARD SERV
WESTERVILLE, OH 43081


CHASE AUTO
14800 FRYE ROAD
FORT WORTH, TX 76155

CHEVY CHASE
6200 CHEVY CHASE D
LAUREL, MD 20707

CHITTENDEN
POB 6568
RUTLAND, VT 05702

CITI
PO BOX 6241
SIOUX FALLS, SD 57117

CITI SHELL
PO BOX 6497
SIOUX FALLS, SD 57117

CITI-SHELL
PO BOX 6497
SIOUX FALLS, SD 57117

CITI/STDNT LN RSRC CNT
99 GARNSEY RD
PITTSFORD, NY 14534

CRDT FIRST
POB 81083
CLEVELAND, OH 44181

DISCOVER FIN
POB 15316
WILMINGTON, DE 19850

DSNB MACYS
9111 DUKE BLVD
MASON, OH 45040

F&M PEOPLES
21 MAIN ST
WARRENTON, VA 22186

FIA CSNA
4060 OGLETOWN/STAN
NEWARK, DE 19713

GEMB/HECHING
P.O. BOX 981400
EL PASO, TX 79998

GEMB/JCP
PO BOX 981402
EL PASO, TX 79998

GEMB/LOWES
PO BOX 981400
EL PASO, TX 79998


GUARANTY BNK
8333 DOUGLAS AVE
DALLAS, TX 75225


HSBC MORTGAGE CORP USA
2929 WALDEN AVE
DEPEW, NY 14043


HSBC MORTUSA
POB 4604
BUFFALO, NY 14240


HSBC/MITSU
90 CHRISTIANA ROAD
NEW CASTLE, DE 19720


HSBC/MITSU
POB 15521
WILMINGTON, DE 19805


HSBC/NEIMN
POB 15521
WILMINGTON, DE 19805


HSBC/OFMAX
PO BOX 15221
WILMINGTON, DE 19850


HSBC/RMSTR
2700 SANDERS ROAD
PROSPECT HEIGHTS, IL 60070


HSBC/RMSTR
POB 15521
WILMINGTON, DE 19805


INDYMAC-HLS
ONE NATIONAL CITY
KALAMAZOO, MI 49009


JOHN DEERE CREDIT
PO Box 650215
Dallas, TX  75265-0215


JPMORGAN CHASE BANK, N

PO BOX 6004
RIDGELAND, MS 39158

KINGS JLRY
26 E WASHINGTON
NEW CASTLE, PA 16101

MACYS/FDSB
13141 34 ST N
CLEARWATER, FL 34622

MCYDSNB
9111 DUKE BLVD
MASON, OH 45040

MELLON BK-W
PO BOX 149
PITTSBURGH, PA 15230

MORTGAGE IT
3451 HAMMOND AVE
WATERLOO, IA 50704

NTB/CBSD
PO BOX 6497
SIOUX FALLS, SD 57117

PNC BANK
2730 LIBERTY AV
PITTSBURGH, PA 15222

SKY BANK
119 E FIFTH STREET
EAST LIVERPOOL, OH 43920

SUNOCO/CITI
PO BOX 6497
SIOUX FALLS, SD 57117

SUNTRUST MTG
P.O. BOX 100100
ATLANTA, GA 30348

THD/CBSD
PO BOX 6497
SIOUX FALLS, SD 57117

WACHDFS
POB 3117
WINSTON SALEM, NC 27102

WACHOV/FTU
PO BOX 3117
WINSTON SALEM, NC 27102

WACHOVIA
794 DAVIS CT
SAN LEANDRO, CA 94577

WACHOVIA CC
PO BOX 3117
WINSTON SALEM, NC 27102

WACHRL
POB 3117
WINSTON SALEM, NC 27102

WFNNB/SERVICE MERCH PR
PO BOX 2974
SHAWNEE MISSION, KS 66201

THOMAS P. GORMAN
300 N. WASHINGTON ST., STE. 400
ALEXANDRIA, VA 22314

UNITED STATES BANKRUPTCY COURT
EASTERN    DISTRICT OF VIRGINIA
Alexandria    Division

In re:

Case No. 09-14063

Chapter 13

Debtor(s)

## SPECIAL NOTICE TO SECURED CREDITOR

To:  Mark Joseph Criscuolo                    , Attn: Loss Mitigation Dept.
_____                   _____
*Name of creditor*
14416 Club House Road, Gainesville, VA 20155
_____
*Description of collateral*

1. The attached chapter 13 plan filed by the debtor(s) proposes (*check one)*:

   [✓]    To value your collateral. *See Section 3 of the plan.* Your lien will be limited to
          the value of the collateral, and any amount you are owed above the value of the
          collateral will be treated as an unsecured claim.

   [ ]    To cancel or reduce a judgment lien or a non-purchase money, non-possessory
          security interest you hold. *See Section 7 of the plan.* All or a portion of the
          amount you are owed will be treated as an unsecured claim.

2. *You should read the attached plan carefully for the details of how your claim is treated.*
The plan may be confirmed, and the proposed relief granted, <u>unless</u> you file and serve a written
objection by the date specified <u>and</u> appear at the confirmation hearing. A copy of the objection
must be served on the debtor(s), their attorney, and the chapter 13 trustee.

| | |
|---|---|
| Date objection due: | July 20, 2009 |
| Date and time of confirmation hearing: | July 29,2009 at 1:30 PM |
| Place of confirmation hearing: | 200 S. Washington St., 2nd Fl. Courtroom I, Alexandria VA |

Mark Joseph Criscuolo
_____
*Name(s) of debtor(s)*

By: /s/ Martin C. Conway
    _____
    *Signature*
                        [✓] Debtor(s)' Attorney
                        [ ] Pro se debtor

Martin C. Conway
_____
*Name of attorney for debtor(s)*
7926 Jones Branch Drive, Suite 930
_____
*Address of attorney [or pro se debtor]*
McLean, VA 22102
_____

Tel. #  703-506-9440
_____
Fax #   703-506-0929
_____

### CERTIFICATE OF SERVICE

I hereby certify that true copies of the foregoing Notice and attached Chapter 13 Plan and Related Motions were served upon the creditor noted above by

( ✓ )  first class mail in conformity with the requirements of Rule 7004(b), Fed.R.Bankr.P; or

(    )  certified mail in conformity with the requirements of Rule 7004(h), Fed.R.Bankr.P

on this 2_____ day of June_____ , 200 9 .

/s/ Martin C. Conway
_____
*Signature of attorney for debtor(s)*

Ver. 06/17/05

UNITED STATES BANKRUPTCY COURT
EASTER DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IN RE:                                  :
                                        :
MARK JOSEPH CRISCUOLO                   :        Case No. 09-14063-SSM
                                        :        Chapter 13
        Debtor.                         :
_____:

MOTION TO DETERMINE SECURED STATUS
OF INDYMAC FEDERAL BANK, SUCCESSOR IN INTREST
TO MORGAGEIT, INC. AND TO STRIP LIEN

COMES NOW Debtor Mark Jospeh Criscuolo ("Debtor") by and through

undersigned counsel, and files this Motion to Determine Secured Status of IndyMac

Federal Bank, Successor in Interest to Mortgageit, Inc.  and to Strip Lien pursuant to 11

U.S.C. §506, and states as follows:

    1.    The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy

Code on May 21, 2009.

    2.    The Debtor owns real property located at 14416 Clubhouse Rd.,

Gainesville, VA 20155-3816 ("Real Property"), and more particularly described as

follows:

        LOT 5, PHASE 4, SECTION 1, VIRGINIA OAKS, AS THE SAME IS SHOWN ON
        A PLAT ATTACHED TO DEED OF RESUBDIVISION, EASEMENT,
        VACATION AND SUBORDINATION RECORDED IN DEED BOOK 2813,
        PAGE 758, AS CORRECTED IN DEED BOOK 2851, PATE 1665, AMOUNG THE
        LAND RECORDS OF PRINCE WILLIAM COUNTY, VIRGINIA.

    3.    The Real Property is encumbered by two deeds of trust:

(a)     SunTrust Mortgage, loan number 0142830702, holds the first Deed of Trust, recorded on November 20, 2006 among the land records of Prince William County bearing the Instrument No. 200611300168080 ("SunTrust Deed of Trust").

(b)     IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc.'s loan number 3002593808, holds the second Deed of Trust, recorded on December 29, 2006 among the land records of Prince William County bearing the instrument no. 200612290180051 ("IndyMac Deed of Trust").

4.     The principal balance owed by the Debtor to SunTrust, which is secured by the SunTrust Deed of Trust, is $470,591.46 as of February 17, 2009.

5.     The principal balance owed by the Debtor to IndyMac, which is secured by the IndyMac Deed of Trust, is 103,831.70 as of February 19, 2009.

6.     Based upon the appraisal conducted by Daniel Thomas Gartrell on May 7, 2009, the value of the Real Property is $425,000.  A true and complete copy of the appraisal is attached as Exhibit A.

7.     IndyMac Federal Bank's interest in the Real Property is completely unsecured.

WHEREFORE Debtor Mark Jospeh Criscuolo ("Debtor") by counsel requests that the Court enter an order (a) granting the Motion; (b) determining the value of the Real Property to be $425,000 (c) determining that IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc. shall be treated as an unsecured claim; (d) voiding the Deed

of Trust of IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc. upon the

Real Property; and (e) granting such other and further relief as the Court deems

appropriate.

MARK JOSPEH CRISCUOLO
BY COUNSEL

/s/ Martin C. Conway
Martin C. Conway (VSB No. 34334)
Michael J. Ferrigno (VSB No. 68140)
PESNER KAWAMOTO CONWAY, PLC
7926 Jones Branch Drive, Suite 930
McLean, VA 22102
(703) 506-9440 (telephone)
(703) 506-0929 (facsimile)
mconway@pkc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid, and filed electronically via ECF/PACER on this 2nd day of June, 2009 to the  creditors and parties in interest on the attached Service List and the following parties:

| | |
|---|---|
| IndyMac Mortgage Services<br>1 Banting<br>Irvine, CA 92618 | W. Clarkson McDow, Jr., Trustee<br>Office of the U.S. Trustee<br>115 South Union Street<br>Alexandria, VA 22314 |

/s/Martin C. Conway
Martin C. Conway

HOMESTAR REAL ESTATE SERVICES, INC.



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
14416 CLUBHOUSE ROAD
GAINESVILLE, VA
20155

### FOR:
MARK CRISCUOLO

### AS OF:
5/7/09

### BY:
DANIEL THOMAS GARTRELL
HOMESTAR REAL ESTATE SERVICES, INC.
8156 TILLINGHAST LANE
GAINESVILLE, VA 20155
P(571) 261-3367 F(571) 261-3368
HOMESTAR2001@AOL.COM

**EXHIBIT**
A

CRISCUOLO
File # 090513G

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 14416 CLUBHOUSE ROAD | City GAINESVILLE | State VA  Zip Code 20155-3816 |
| Borrower CRISCUOLO | Owner of Public Record CRISCUOLO | County PRINCE WILLIAM |

Legal Description  VIRGINIA OAKS PH 4 SEC 1 L 5

| | | |
|---|---|---|
| Assessor's Parcel # 212391 | Tax Year 2008 | R.E. Taxes $ 5,760 |
| Neighborhood Name  VIRGINIA OAKS | Map Reference  ADC PW 7 D3 | Census Tract 9014.05 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant          Special Assessments $ 0          ☒ PUD    HOA $ 756.00  ☒ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  PERSONAL INTEREST
Lender/Client  MARK CRISCUOLO          Address  14416 CLUBHOUSE ROAD, GAINESVILLE, VA 20155
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☒ Yes ☐ No
Report data source(s) used, offering price(s), and date(s).  MRIS, PUBLIC RECORD: LISTED ON 7/30/07 AT $639,900, WITHDRAWN ON 9/27/08 AT
$589,900. (CURRENT TRANSACTION) LISTED ON 10/20/08 AT $575,000, SUBSEQUENTLY REDUCED TO $450,000.
I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not
performed.  N/A

Contract Price $ N/A          Date of Contract N/A          Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) N/A
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?          ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.          NONE KNOWN

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE  AGE | One-Unit 70+/- % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)  (yrs) | 2-4 Unit <5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 150  Low  NEW | Multi-Family <5 % |
| Neighborhood Boundaries | BORDERED ON THE NORTH BY RTE 29, TO THE EAST BY LINTON HALL | 1,100+ High  50+ | Commercial 10+/- % |
| ROAD, TO THE SOUTH BY GLENKIRK ROAD, AND TO THE WEST BY LAKE MANASSAS. | | 400+/- Pred.  5+/- | Other 10+/- % |

Neighborhood Description  SCHOOLS AND RECREATIONAL FACILITIES ARE LOCATED IN THE COMMUNITY.  MAJOR BUSINESS DISTRICTS IN
THE METROPOLITAN WASHINGTON DC AREA ARE ACCESSIBLE VIA PUBLIC AND PRIVATE TRANSPORTATION SYSTEMS. THERE ARE NO
ADVERSE FACTORS APPARENT WHICH MIGHT IMPACT THE SUBJECT'S MARKETABILITY EXCEPT AS NOTED HEREIN.
Market Conditions (including support for the above conclusions)          PROPERTY VALUES IN THE SUBJECT'S AREA HAVE DECLINED SINCE LATE 2005,
HOWEVER, ARE CURRENTLY STABLE ACCORDING TO LOCAL STATISTICS PROVIDED VIA MRIS. THE MARKETING TIME RANGES FROM 0
TO 180 DAYS TYPICALLY. MOST TYPES OF FINANCING ARE READILY AVAILABLE INCLUDING FHA, VA, & CONVENTIONAL PROGRAMS.

| | | | |
|---|---|---|---|
| Dimensions PLAT NOT INCLUDED. | Area 7,910 SF (0.18 ACRES) | Shape IRREGULAR | View GOLF COURSE |

Specific Zoning Classification RPC          Zoning Description RESIDENTIAL PLANNED COMMUNITY
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No  If No, describe  N/A

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X          FEMA Map # 51153C0088D          FEMA Map Date 1/5/1995
Are the utilities and off-site improvements typical for the market area?  ☒ Yes ☐ No  If No, describe  N/A
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?          ☐ Yes ☒ No  If Yes, describe
THERE APPEARED NO ADVERSE EASEMENTS, ENCROACHMENTS OR OTHERWISE UNFAVORABLE ON-SITE CONDITIONS OTHER THAN
TYPICAL UTILITY EASEMENTS WHICH DO NOT ADVERSELY AFFECT VALUE. SUBJECT CONFORMS TO ZONING.

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls  POURED CONC/AVG | Floors  HDWD,WWC/GD |
| # of Stories  2 + BASEMENT | ☒ Full Basement ☐ Partial Basement | Exterior Walls  VINYL SIDING/AVG | Walls  DRYWALL/GD |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area  1,900 sq.ft. | Roof Surface  COMP SHINGL/AVG | Trim/Finish  P WOOD/GD |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish  APPROX 90 % | Gutters & Downspouts ALUMINUM/AVG | Bath Floor  HDWD,VINYL/GD |
| Design (Style)  COLONIAL | ☒ Outside Entry/Exit ☒ Sump Pump | Window Type  DOUBLE HNG/AVG | Bath Wainscot CERAMIC/GD |
| Year Built  2000 | Evidence of ☐ Infestation | Storm Sash/Insulated  DOUBLE PANE/AVG | Car Storage ☐ None |
| Effective Age (Yrs)  1-3 | ☐ Dampness ☐ Settlement | Screens  YES/AVG | ☒ Driveway  # of Cars  2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities  Woodstove(s) # | Driveway Surface  ASPH/CON APR |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel GAS | ☒ Fireplace(s) #  1 ☐ Fence | ☒ Garage  # of Cars  2 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck DECK ☐ Porch | ☐ Carport  # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:          10 Rooms          4 Bedrooms          2.5 Bath(s)          3,319 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).          DOUBLE PANE WINDOWS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).          SUBJECT REFLECTS EXCELLENT MAINTENANCE
PATTERNS AND IS IN OVERALL GOOD CONDITION RELATIVE TO LIKE PRODUCTS IN THE COMMUNITY. (SEE PHOTO ADDENDUM)

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No  If Yes, describe
N/A

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No  If No, describe
N/A

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

CRISCUOLO
File # 090513G

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| There are **2** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 469,950 to $ 499,000 | | | | | | | | |
| There are **7** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 420,000 to $ 584,900 | | | | | | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 14416 CLUBHOUSE ROAD | 7833 VIRGINIA OAKS DRIVE | | 14421 CLUBHOUSE ROAD | | 14348 PRESIDENTS LANDING W | |
| | GAINESVILLE, VA 20155-3816 | GAINESVILLE, VA 20155 | | GAINESVILLE, VA 20155 | | GAINESVILLE, VA 20155 | |
| Proximity to Subject | | 0.43 MILES NE | | 0.02 MILES NW | | 0.33 MILES NE | |
| Sale Price | $ N/A | | $ 455,000 | | $ 420,000 | | $ 518,900 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 161.81 sq.ft. | | $ 107.03 sq.ft. | | $ 129.72 sq.ft. | |
| Data Source(s) | | MRIS/PUBLIC RECORD/VISUAL | | MRIS/PUBLIC RECORD/VISUAL | | MRIS/PUBLIC RECORD/VISUAL | |
| Verification Source(s) | | DOM: 8 | | DOM: 108 | | DOM: 11 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | CONV@MRKT | 0 | CONV@MRKT | 0 | CONV@MRKT | 0 |
| Concessions | | $4,550 | | NONE KNOWN | 0 | NONE KNOWN | 0 |
| Date of Sale/Time | | SD 4/17/09 | 0 | SD 4/15/09 | 0 | SD 3/16/09 | 0 |
| Location | VIRGINIA OAK | VIRGINIA OAK | | VIRGINIA OAK | | VIRGINIA OAK | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 0.18 ACRES | 0.26 ACRES | 0 | 0.16 ACRES | 0 | 0.38 ACRES | -20,000 |
| View | GOLF COURSE | GOLF COURSE | | AVERAGE | +20,000 | GOLF COURSE | |
| Design (Style) | COLONIAL | COLONIAL | | COLONIAL | | COLONIAL | |
| Quality of Construction | ADEQUATE | ADEQUATE | | ADEQUATE | | SUPERIOR | -20,000 |
| Actual Age | 9 YEARS | 12 YEARS | 0 | 9 YEARS | | 9 YEARS | |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 10  4  2.5 | 10  4  2.5 | | 10  4  3.5 | -3,000 | 10  4  3.5 | -3,000 |
| Gross Living Area | 3,319 sq.ft. | 2,812 sq.ft. | +30,000 | 3,924 sq.ft. | -36,000 | 4,000 sq.ft. | -41,000 |
| Basement & Finished | FULL, W/U ENT | FULL, W/U ENT | | FULL, W/U ENT | | FULL, W/U ENT | |
| Rooms Below Grade | RR, DEN | RR, DEN, FBA | -3,000 | RR, 2DEN, FBA | -4,000 | RR | +1,000 |
| Functional Utility | 4 BEDROOM | 4 BEDROOM | | 4 BEDROOM | | 4 BEDROOM | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | DBLPNWNDWS | DBLPNWNDWS | | DBLPNWNDWS | | DBLPNWNDWS | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE | |
| Porch/Patio/Deck | DECK | DECK | | SCR POR,DECK | -3,500 | NONE | +2,500 |
| Fireplace/Woodstove | 1 FIREPLACE | 1 FIREPLACE | | 2 FIREPLACES | -2,500 | 1 FIREPLACE | |
| Fence, Shed, Etc. | NONE | NONE | | FENCE | -500 | NONE | |
| Net Adjustment (Total) | | ☒+ ☐- $ 27,000 | | ☐+ ☒- $ -29,500 | | ☐+ ☒- $ -80,500 | |
| Adjusted Sale Price | | Net Adj. 5.9 % | | Net Adj. 7.0 % | | Net Adj. 15.5 % | |
| of Comparables | | Gross Adj. 7.3 % $ 482,000 | | Gross Adj. 16.5 % $ 390,500 | | Gross Adj. 16.9 % $ 438,400 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain    N/A

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MRIS, PUBLIC RECORD
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MRIS, PUBLIC RECORD
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | N/A | N/A | 8/7/08 |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | $695,319 |
| Data Source(s) | PUBLIC RECORD/MRIS | PUBLIC RECORD/MRIS | PUBLIC RECORD/MRIS | PUBLIC RECORD/MRIS |
| Effective Date of Data Source(s) | 4/18/09 | 4/18/09 | 4/18/09 | 4/18/09 |

Analysis of prior sale or transfer history of the subject property and comparable sales    NO OTHER SUBJECT TRANSFERS THAN ABOVE IN THE LAST 36 MONTHS PER PUBLIC RECORD. NO OTHER COMPARABLE TRANSFERS THAN ABOVE IN THE LAST 12 MONTHS PER PUBLIC RECORD.

Summary of Sales Comparison Approach    ALL COMPARABLES ARE VERIFIED CLOSED SALES. THE COMPARABLES SELECTED REPRESENT THE MOST SIMILAR AVAILABLE PROPERTIES TO THE SUBJECT IN STYLE, DESIGN, AND FUNCTIONAL UTILITY AND HAVE BEEN ADJUSTED FOR ANY SIGNIFICANT VARIANCE BETWEEN THEM AND THE SUBJECT. ALL COMPARABLES FURNISHED WERE AFFORDED EQUAL WEIGHT IN ARRIVING AT AN ESTIMATE OF VALUE FOR THE SUBJECT. IT IS NOTED THAT COMPARABLES #2 AND #3 WERE BANK OWNED/SHORT SALES AT THE TIME OF LAST TRANSFER.

Indicated Value by Sales Comparison Approach $ 425,000
Indicated Value by: Sales Comparison Approach $ 425,000    Cost Approach (if developed) $ N/A    Income Approach (if developed) $ N/A
PURPOSE OF APPRAISAL: TO ESTIMATE THE MARKET VALUE OF THE SUBJECT. THE SALES COMPARISON APPROACH IS DEEMED MOST RELIABLE.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  NONE.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 425,000 , as of 5/7/09 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

CRISCUOLO
File # 090513G

**ADDITIONAL COMMENTS**

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     N/A

| COST APPROACH | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ |
| Source of cost data  N/A | DWELLING              Sq.Ft. @ $ | = $ |
| Quality rating from cost service  N/A    Effective date of cost data  N/A | Sq.Ft. @ $ | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | = $ |
| N/A | Garage/Carport         Sq.Ft. @ $ | = $ |
| | Total Estimate of Cost-New | = $ |
| | Less      Physical     Functional     External | |
| | Depreciation | = $( ) |
| | Depreciated Cost of Improvements | = $ |
| | "As-Is" Value of Site Improvements | = $ |
| Estimated Remaining Economic Life (HUD and VA only)   N/A Years | INDICATED VALUE BY COST APPROACH | = $ |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| INCOME | | |
|---|---|---|
| Estimated Monthly Market Rent $   N/A    X Gross Rent Multiplier   N/A    = $   N/A | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM)   N/A | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No   Unit type(s) ☒ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project   N/A

| PUD INFORMATION | | | | |
|---|---|---|---|---|
| Total number of phases   N/A | Total number of units   N/A | Total number of units sold   N/A | | |
| Total number of units rented   N/A | Total number of units for sale   N/A | Data source(s)   N/A | | |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.  N/A | | | | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source  N/A | | | | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.   N/A | | | | |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.  N/A | | | | |
| Describe common elements and recreational facilities.   N/A | | | | |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

CRISCUOLO
File # 090513G

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name DANIEL THOMAS GARTRELL | Name |
| Company Name HOMESTAR REAL ESTATE SERVICES, INC. | Company Name |
| Company Address 8156 TILLINGHAST LANE | Company Address |
| GAINESVILLE, VA 20155 | |
| Telephone Number (571) 261-3367 | Telephone Number |
| Email Address HOMESTAR2001@AOL.COM | Email Address |
| Date of Signature and Report 5/7/09 | Date of Signature |
| Effective Date of Appraisal 5/7/09 | State Certification # |
| State Certification # 4001 007775 | or State License # |
| or State License # | State |
| or Other (describe) State # | Expiration Date of Certification or License |
| State VA | |
| Expiration Date of Certification or License 12/31/09 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
| 14416 CLUBHOUSE ROAD | Date of Inspection |
| GAINESVILLE, VA 20155-3816 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 425,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name MARK CRISCUOLO | **COMPARABLE SALES** |
| Company Name N/A | |
| Company Address N/A | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

## SUPPLEMENTAL ADDENDUM

File No.090513G

| Borrower/Client | CRISCUOLO | | | |
|---|---|---|---|---|
| Property Address | 14416 CLUBHOUSE ROAD | | | |
| City | GAINESVILLE | County PRINCE WILLIAM | State VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO | | | |

FIRREA ADDENDUM

THIS APPRAISAL REPORT CONFORMS TO THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE (USPAP) ADOPTED BY THE APPRAISAL FOUNDATION.

NO VALUE FOR ANY PERSONAL PROPERTY, FIXTURES AND/OR INTANGIBLE ITEMS IS INCLUDED IN THE APPRAISED VALUE. ANY VALUE ATTRIBUTED TO PERSONAL PROPERTY, WHICH WOULD CONVEY WITH THE PROPERTY, IS NOMINAL AND HAS NO EFFECT ON THE SECURITY OF THE LOAN.

ADDENDUM TO THE APPRAISAL REPORT

FLOOD MAP:

HUD FLOOD MAP INFORMATION IS FURNISHED FROM NATIONAL FLOOD INSURANCE PROGRAM BY FEDERAL EMERGENCY MANAGEMENT AGENCY. THE APPRAISER HAS MADE AN INFORMED ESTIMATE FROM THE FEMA FLOOD MAPS (IF AVAILABLE) ON THE FLOOD & HAZARD ZONE IN WHICH THE SUBJECT MAY BE LOCATED. THESE FLOOD MAPS ARE USED AS GUIDES FOR THE APPRAISER AND DUE TO THEIR SCALE AND LACK OF REFERENCE POINTS CAN RENDER THEM INACCURATE. WE DO NOT GUARANTEE THE EXISTENCE OR NON-EXISTENCE OF THE REPORTED ZONE. THIS DETERMINATION IS DONE BY SURVEYORS AND WE SUGGEST THEY BE EMPLOYED TO DETERMINE THE SUBJECT'S FLOOD ZONE.

ENVIRONMENTAL CONDITIONS:

THE VALUE ESTIMATED IS BASED ON THE ASSUMPTION THAT THE PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS UNLESS OTHERWISE STATED IN THIS REPORT. THE APPRAISER IS NOT AN EXPERT IN THE IDENTIFICATION OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS. THE APPRAISER'S ROUTINE INSPECTION OF AND INQUIRES ABOUT THE SUBJECT PROPERTY DID NOT DEVELOP ANY INFORMATION THAT INDICATED ANY APPARENT SIGNIFICANT HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITION WHICH WOULD AFFECT THE PROPERTY NEGATIVELY UNLESS OTHERWISE STATED IN THIS REPORT. IT IS POSSIBLE THAT TESTS AND INSPECTIONS MADE BY A QUALIFIED HAZARDOUS SUBSTANCE AND ENVIRONMENTAL EXPERT WOULD REVEAL THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS ON OR ABOUT THE PROPERTY THAT WOULD NEGATIVELY AFFECT ITS VALUE. THE VALUE ESTIMATE IS PREDICATED ON THE ASSUMPTION THAT THERE IS NO SUCH MATERIAL ON OR IN THE PROPERTY THAT WOULD CAUSE A LOSS IN VALUE. NO RESPONSIBILITY IS ASSUMED FOR ANY SUCH CONDITION, OR FOR THE EXPERTISE OR ENGINEERING KNOWLEDGE REQUIRED TO DISCOVER THEM. WE URGE THE CLIENT/PURCHASER TO RETAIN AN EXPERT IN THIS FIELD TO MAKE AN ACCURATE DETERMINATION CONCERNING THE EXISTENCE OF SUCH MATERIALS.

IN THIS APPRAISAL ASSIGNMENT, THE EXISTENCE OF ANY ENVIRONMENTALLY HAZARD PRODUCT USED IN THE CONSTRUCTION OR MAINTENANCE OF THE BUILDING, SUCH AS THE PRESENCE OF HAZARDOUS WASTES, TOXIC SUBSTANCES, RADON GAS, ASBESTOS-CONTAINING MATERIAL, UREAFORMALDEHYDE INSULATION, LEAD PAIN OR LEAD PRODUCTS, ETC., WHICH MAY OR MAY NOT BE PRESENT IN OR ON THE SUBJECT PROPERTY OR ANY SITE WITHIN THE VICINITY OF THE PROPERTY, WAS NOT OBSERVED BY THE APPRAISER AND THE APPRAISER HAS NO KNOWLEDGE OF ANY SUCH ENVIRONMENTAL HAZARD. OTHER ENVIRONMENTAL HAZARDS ARE TO INCLUDE:

1) THE PROXIMITY OF A PRESENT OR FORMER SERVICE STATION;
2) THE PROXIMITY OF PRESENT OR FORMER UNDERGROUND STORAGE TANKS (INCLUDING SMALL, RESIDENTIAL UNDERGROUND OIL TANKS);
3) CONSTRUCTION OF SUBDIVISION ON A LANDFILL SITE;
4) EVIDENCE OF IMPROPER DISPOSITION OF TOXIC WASTE (ROADSIDE DUMPING, ETC.).

UNLESS CITED IN THE APPRAISAL REPORT, THE APPRAISER HAS NO KNOWLEDGE OF ANY SUCH ENVIRONMENTAL HAZARDS BY MEANS OF A ROUTINE APPRAISAL INSPECTION OF THE SUBJECT PROPERTY AND ITS NEIGHBORHOOD AS OUTLINED BY THE UNIFORM STANDARDS OF PROFESSIONAL PRACTICE.

DWELLING BUILT PRIOR TO 1978 MAY CONTAIN LEAD-BASED PAINT. NO WARRANTY SHOULD BE IMPLIED; HOWEVER THE APPRAISER HAS NO KNOWLEDGE OF ANY ENVIRONMENTAL HAZARD IN OR NEAR THE SUBJECT.

FNMA/FHLMC GUIDELINES:

THE CATEGORY HEADED "PROPERTY RIGHTS APPRAISED," OF THE ATTACHED FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA)/ FEDERAL HOME LOAN MORTGAGE CORPORATION (FHLMC) FORM, DE MINIMUS PUD WILL BE CONSIDERED THE SAME AS PUD IN ACCORDANCE WITH THE CURRENT FNMA GUIDELINES.

IN ACCORDANCE WITH THE FNMA GUIDELINES, THE REMAINING PHYSICAL LIFE ("THE ESTIMATED PERIOD OVER WHICH THE IMPROVEMENTS WILL PHYSICALLY LAST IF THEY RECEIVE NORMAL MAINTENANCE") IS NOT APPLICABLE TO THE FUNCTION OF THIS APPRAISAL REPORT AND HAS NOT BEEN INCLUDED IN THIS REPORT.

IT IS THE APPRAISER'S OPINION THAT THE MARKETING TIME FOR THE SUBJECT PROPERTY IS AS NOTED IN THE NEIGHBORHOOD SECTION ON PAGE ONE OF FREDDIE MAC FORM 70/FANNIE MAE FORM 1004.

THE APPRAISAL ASSIGNMENT WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION OR THE APPROVAL OF A LOAN.

## SUPPLEMENTAL ADDENDUM

File No. 090513G

| Borrower/Client | CRISCUOLO | | | |
|---|---|---|---|---|
| Property Address | 14416 CLUBHOUSE ROAD | | | |
| City | GAINESVILLE | County PRINCE WILLIAM | State VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO | | | |

EVERY EFFORT HAS BEEN MADE TO CONFORM TO FNMA AND FNMAC GUIDELINES AND IN MOST CASES, AN EVEN STRICTER INTERPRETATION FOUND COMMON TO MOST INVESTORS IN THE SECONDARY MARKET. THE COMMENTS IN THIS ADDENDUM ARE INTENDED TO EXPAND ON WHAT THE APPRAISER FEELS ARE THE AREAS OF MOST CONCERN TO MORTGAGE INVESTORS IN UNDERWRITING AN APPRAISAL REPORT. THE EXPANDED NARRATIVE ALLOWS THE APPRAISER TO PROVIDE ADDITIONAL COMMENTS WHERE SUFFICIENT SPACE IS NOT AVAILABLE ON THE APPRAISAL FORM. THE MARKET HAS BEEN THOROUGHLY SEARCHED AND THE SALES REPORTED ARE IN THE APPRAISER'S OPINION THE BEST SALES AVAILABLE THAT PROPERLY WEIGH THE MAJOR ELEMENTS OF COMPARISON.

THE COMPARABLES ANALYZED ARE CONSIDERED TO BE SIMILAR TO THE SUBJECT EXCEPT AS NOTED; THE CONDITION OF EACH IS BASED ON THE RESPECTIVE AGENT'S COMMENTS; AND EACH IS CONSIDERED TO BE A RECENT SALE OF A PROPERTY MOST SIMILAR TO THE SUBJECT AS DISCOVERED THROUGH RESEARCH OF DATA AVAILABLE TO THE APPRAISER. SALES CHOSEN, IN THE APPRAISER'S OPINION, ARE THE BEST INDICATORS OF VALUE AND ADJUSTMENTS ARE SUPPORTED BY PAIRED SALES ANALYSIS.

THE APPRAISER HAS MEASURED THE SUBJECT TO ESTABLISH THE ABOVE GRADE GROSS LIVING AREA. THERE MAY BE SOME DEVIATIONS BETWEEN THE APPRAISER'S MEASUREMENTS AND THOSE PUBLISHED IN THE PUBLIC RECORDS. THE DEVIATIONS MAY BE DUE TO ROUNDING, INTERPRETATION OF USABLE LIVING AREA (SUCH AS OPEN FOYER/CATHEDRAL ROOMS) AND/OR DIFFERENCES IN QUALITY OF EQUIPMENT. THE ACTUAL SURVEY OR BLUE PRINTS OF SUBJECT AND COMPARABLES WERE NOT AVAILABLE. MINOR DEVIATIONS IN ACTUAL FOOTAGE ARE CONSIDERED INSIGNIFICANT AND SHOULD NOT AFFECT THE ESTIMATE OF VALUE.

SALES/LISTING HISTORY OF THE SUBJECT FOR THE LAST 36 MONTHS:

UNLESS OTHERWISE STATED IN THIS REPORT, THE REPORTED SALE IS THE ONLY OFFERING AND/OR TRANSACTION IN THE LAST 36 MONTHS, ACCORDING TO THE AGENT AND PUBLIC RECORDS. THERE IS NO OTHER INDICATION OF THE PROPERTY BEING MARKETED THROUGH THE MLS OF THE COUNTY IN WHICH THE SUBJECT IS LOCATED. INCLUDED IN THE SALES COMPARISON ANALYSIS "DATE, PRICE AND DATE SOURCE FOR PRIOR SALES WITHIN YEAR OF APPRAISAL" IS THE LAST RECORDED TRANSFER OF THE SUBJECT PROPERTY.

LIMITATIONS OF THE REPORT

NO TITLE SEARCH OR REPORT WAS PRESENTED TO NOR PERFORMED BY THE APPRAISER OF THIS REPORT. AS A TITLE SEARCH AND REPORT GOES BEYOND THE EXPERTISE OF THE APPRAISER, NO RESPONSIBILITY IS GIVEN IN THIS REPORT IN ANY MATTER INVOLVING ENCUMBRANCES, PENDING LITIGATION, SPECIAL ASSESSMENTS OR EASEMENTS ON THE SUBJECT PROPERTY.

THE SUBJECT IS IN GENERAL COMPLIANCE WITH THE LOCAL ZONING. PERMITS FOR ANY IMPROVEMENTS, WHICH MAY HAVE TAKEN PLACE SINCE THE TIME OF CONSTRUCTION, HAVE NOT BEEN PRESENTED TO THE APPRAISER. IT IS ASSUMED THAT ALL REQUIRED ZONING AND BUILDING USE REGULATIONS FOR THE SUBJECT PROPERTY HAVE BEEN COMPLIED WITH OR COULD BE COMPLIED WITH BY THE OWNER IN THIS REPORT. ANY INFORMATION AND ANALYSIS SHOWN IN THIS REPORT IS BASED ONLY ON A PRELIMINARY INVESTIGATION. A COMPREHENSIVE EXAMINATION OF LAWS AND REGULATIONS AFFECTING THE SUBJECT PROPERTY WAS NOT PERFORMED FOR THIS APPRAISAL. APPROPRIATE GOVERNMENT OFFICIALS AND/OR AN ATTORNEY SHOULD BE CONSULTED IF AN INTERESTED PARTY HAS ANY QUESTIONS OR CONCERNS ON IMPROVEMENTS OR SITE.

AN ENGINEERING INSPECTION WAS NOT MADE, AND BECAUSE SUCH KNOWLEDGE GOES BEYOND THE SCOPE OF THIS APPRAISAL, ANY OBSERVED CONDITION OR OTHER COMMENTS GIVEN IN THIS APPRAISAL REPORT SHOULD NOT BE TAKEN AS A GUARANTEE THAT A PROBLEM DOES NOT EXISTS. SPECIFICALLY, NO GUARANTEE IS MADE AS TO THE ADEQUACY OR CONDITION OF THE FOUNDATION, ROOF, EXTERIOR WALLS, INTERIOR WALLS, FLOORS, HEATING SYSTEMS, AIR CONDITIONING SYSTEM, PLUMBING, ELECTRICAL SERVICE, INSULATION, WELL/SEPTIC SYSTEM (IF APPLICABLE), FIRE RETARDANT PLYWOOD, OR ANY OTHER DETAILED CONSTRUCTION MATTERS. THE INSPECTION BY A CONSTRUCTION EXPERT WOULD BE REQUIRED TO ASCERTAIN POSSIBLE DEFECTS; HOWEVER, NONE WERE NOTED WITHIN THE APPRAISER'S EXPERTISE.

IN THE SALES COMPARISON ANALYSIS GRID REGARDING THE ITEMS OF ROOM COUNT AND GROSS LIVING AREA, BATHROOMS ARE ADDRESSED ON THE FIRST LINE AND GROSS LIVING AREA/ROOM COUNT ARE ADDRESSED IN THE AGGREGATE AS A SINGLE ADJUSTMENT ON THE SECOND LINE.

THE PHOTOGRAPHS USED IN THIS APPRAISAL REPORT ARE DIGITAL PHOTOGRAPHS UTILIZING PHOTO IMAGING TECHNOLOGY. THEY ARE CONSIDERED TO BE A TRUE AND CORRECT REPRESENTATION OF THE SUBJECT PROPERTY AND COMPARABLE SALES UTILIZED WITHIN THIS REPORT. NO ALTERATIONS WERE MADE TO THE IMAGES WHICH WOULD MISREPRESENT THE APPEARANCE OF THE SUBJECT OR COMPARABLES. THE COMPARABLE PHOTOGRAPHS UTILIZED IN THIS REPORT MAY HAVE BEEN TRANSFERRED OR EXPORTED FROM DATABASES OF PHOTOGRAPHS UTILIZED BY THE APPRAISER. THE DATABASE CONTAINED PHOTOGRAPHS THAT WERE TAKEN AT THE TIME THE PROPERTIES WERE LISTED AND PLACED ON THE MARKET. THEREFORE, SOME OF THE COMPARABLE PHOTOGRAPHS INCLUDED IN THIS REPORT MAY CONTAIN "FOR SALE" SIGNS. THE PHOTOGRAPHS OBTAINED FROM THE DATABASE MOST CLOSELY REPRESENT THE COMPARABLE PROPERTIES AT THE TIME OF THEIR RESPECTIVE SALES. IN COMPLIANCE WITH THE MRIS REQUIREMENTS, SUCH PHOTOGRAPHS ARE NOTED BY THE MRIS COPYRIGHT SYMBOL, AND ARE TRUE REPRESENTATIONS OF THE PROPERTIES. ALTHOUGH A VISUAL INSPECTION OF EACH COMPARABLE PROPERTY WAS PERFORMED BY THE APPRAISER, MRIS PHOTOS MAY HAVE BEEN USED TO PROVIDE A CLEARER VIEW OF THE COMPARABLE. THE CRITERIA ANALYZED FOR EACH COMPARABLE IS BASED ON HISTORICAL DATA AND THE CURRENT CONDITION OR STATE OF EXISTENCE OF THE COMPARABLE PROPERTIES IS IRRELEVANT TO THE SCOPE OF THE APPRAISAL ASSIGNMENT.

GROSS LIVING AREA FOR COMPARABLE PROPERTIES WAS DERIVED FROM TAX ASSESSMENT RECORDS, IN-HOUSE APPRAISAL FILES OR VARIOUS FIELD MEASUREMENT TECHNIQUES. ALTHOUGH DEEMED ACCURATE, THEY SHOULD BE CONSIDERED APPROXIMATIONS.

## SUPPLEMENTAL ADDENDUM

File No. 090513G

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | CRISCUOLO | | | | | |
| Property Address | 14416 CLUBHOUSE ROAD | | | | | |
| City | GAINESVILLE | County | PRINCE WILLIAM | State | VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO | | | | | |

THE FLOOR PLAN IS NOT REQUIRED ACCORDING TO CURRENT FNMA GUIDELINES SECTION 102, ITEM C, UNLESS FUNCTIONAL OBSOLESCENCE IS OBSERVED. NO FUNCTIONAL OBSOLESCENCE IS OBSERVED. THE FLOOR PLAN IS INCLUDED FOR INFORMATIONAL PURPOSES ONLY.

HOMEOWNERS ASSOCIATION FEES ARE APPROXIMATELY $756.00 PER YEAR, WHICH IS TYPICAL OF THE AREA, AND HAS NO APPARENT ADVERSE IMPACT ON THE VALUE ESTIMATED HEREIN.

THE SOFTWARE PROGRAMS USED TO TRANSFER THE REPORT ELECTRONICALLY PROVIDE DIGITAL SIGNATURE FEATURES FOR THE APPRAISER(S) SIGNING THE REPORT. THE APPRAISER THAT HAS SIGNED (AFFIXED AN ELECTRONIC SIGNATURE TO) THIS REPORT HAS ENSURED THAT THE SIGNATURE(S) IS/ARE PASSWORD PROTECTED AND THE APPRAISER HAS MAINTAINED CONTROL OF THE SIGNATURE. PER 2002 UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, A SIGNATURE CAN BE REPRESENTED BY A HANDWRITTEN MARK, A DIGITIZED IMAGE CONTROLLED BY A PERSONAL IDENTIFICATION NUMBER, OR OTHER MEDIA, WHERE THE APPRAISER HAS SOLE PERSONALIZED CONTROL OF AFFIXING THE SIGNATURE. ELECTRONICALLY AFFIXING A SIGNATURE TO A REPORT CARRIES THE SAME LEVEL OF AUTHENTICITY AND RESPONSIBILITY AS AN ORIGINAL INK SIGNATURE.

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

## Subject Photo Page

| Borrower/Client | CRISCUOLO | | | | |
|---|---|---|---|---|---|
| Property Address | 14416 CLUBHOUSE ROAD | | | | |
| City | GAINESVILLE | County PRINCE WILLIAM | State VA | Zip Code 20155-3816 | |
| Lender | MARK CRISCUOLO | | | | |



**Subject Front**

14416 CLUBHOUSE ROAD
| | |
|---|---|
| Sales Price | N/A |
| GLA | 3,319 |
| Total Rooms | 10 |
| Total Bedrms | 4 |
| Total Bathrms | 2.5 |
| Location | VIRGINIA OAK |
| View | GOLF COURSE |
| Site | 0.18 ACRES |
| Quality | ADEQUATE |
| Age | 9 YEARS |



**Subject Rear**



**Subject Street**

# Photograph Addendum

| Borrower/Client | CRISCUOLO | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14416 CLUBHOUSE ROAD | | | | | |
| City | GAINESVILLE | County | PRINCE WILLIAM | State | VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO | | | | | |



**ALTERNATE STREET VIEW**

Comments:



**MASTER BATHROOM**

Comments:



**MASTER BEDROOM**

Comments:



**DINING ROOM**

Comments:

# Photograph Addendum

| Borrower/Client | CRISCUOLO | | | | |
|---|---|---|---|---|---|
| Property Address | 14416 CLUBHOUSE ROAD | | | | |
| City | GAINESVILLE | County | PRINCE WILLIAM | State VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO | | | | |



**LIVING ROOM**

Comments:



**FAMILY ROOM**

Comments:



**KITCHEN**

Comments:



**KITCHEN/SUNROOM**

Comments:

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | CRISCUOLO |
| Property Address | 14416 CLUBHOUSE ROAD |
| City | GAINESVILLE | County PRINCE WILLIAM | State VA | Zip Code 20155-3816 |
| Lender | MARK CRISCUOLO |



### Comparable 1
**7833 VIRGINIA OAKS DRIVE**

| | |
|---|---|
| Proximity | 0.43 MILES NE |
| Sale Price | 455,000 |
| GLA | 2,812 |
| Total Rooms | 10 |
| Total Bedrms | 4 |
| Total Bathrms | 2.5 |
| Location | VIRGINIA OAK |
| View | GOLF COURSE |
| Site | 0.26 ACRES |
| Quality | ADEQUATE |
| Age | 12 YEARS |



### Comparable 2
**14421 CLUBHOUSE ROAD**

| | |
|---|---|
| Proximity | 0.02 MILES NW |
| Sale Price | 420,000 |
| GLA | 3,924 |
| Total Rooms | 10 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | VIRGINIA OAK |
| View | AVERAGE |
| Site | 0.16 ACRES |
| Quality | ADEQUATE |
| Age | 9 YEARS |



### Comparable 3
**14348 PRESIDENTS LANDING V**

| | |
|---|---|
| Proximity | 0.33 MILES NE |
| Sale Price | 518,900 |
| GLA | 4,000 |
| Total Rooms | 10 |
| Total Bedrms | 4 |
| Total Bathrms | 3.5 |
| Location | VIRGINIA OAK |
| View | GOLF COURSE |
| Site | 0.38 ACRES |
| Quality | SUPERIOR |
| Age | 9 YEARS |

**DEPARTMENT OF PROFESSIONAL AND OCCUPATIONAL REGULATION**
**COMMONWEALTH OF VIRGINIA**
9960 Mayland Dr., Suite 400, Richmond, VA 23233
Telephone: 1 (804) 367-8500

EXPIRED ON
12-31-2009

NUMBER
4001 007775

**REAL ESTATE APPRAISER BOARD**
**CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER**

DANIEL THOMAS GARTRELL
8156 TILLINGHAST LN

GAINESVILLE VA 20155

(SEE REVERSE SIDE FOR NAME AND OR ADDRESS CHANGE)

# Market Conditions Addendum to the Appraisal Report

File No. 090513G

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address 14416 CLUBHOUSE ROAD | City GAINESVILLE | | State VA | ZIP Code 20155-3816 |
|---|---|---|---|---|

Borrower   CRISCUOLO

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 2 | 1 | 4 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.3 | 0.3 | 1.3 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | N/A | N/A | 2 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | N/A | N/A | 1.5 | ☐ Declining | ☒ Stable | ☐ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 496,375 | 581,786 | 486,950 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 44 | 222 | 60 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 482,200 | 595,000 | 489,400 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 44 | 56 | 30 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 102.28 | 97.78 | 97.92 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    SELLER CONCESSIONS OF 3% TO 5% ARE TYPICAL FOR THE SUBJECTS MARKET AREA AND HAVE REMAINED RELATIVELY STABLE OVER THE PAST 12 MONTHS.

Are foreclosure sales (REO sales) a factor in the market?  ☒ Yes  ☐ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
REO PROPERTY AND SHORT SALES HAVE HAD A SIGNIFICANT IMPACT ON MARKET VALUES IN VIRGINIA OAKS, HOWEVER, SUPPLY OF STRESSED SALES IS RAPIDLY DECLINING WITH THE ADVANCE OF THE SPRING MARKET COMBINED WITH HISTORICALLY LOW INTEREST RATES. IT IS THE APPRAISERS OPINION THAT NEW ARMS LENGTH TRANSACTIONS ARE BEGINNING TO BRING BALANCE TO THE NEIGHBORHOOD.

Cite data sources for above information.    MRIS/PUBLIC RECORD

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
N/A

| If the subject is a unit in a condominium or cooperative project , complete the following: | | N/A | | Project Name:  N/A | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.    N/A

Summarize the above trends and address the impact on the subject unit and project.    N/A

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name   DANIEL THOMAS GARTRELL | | Supervisory Appraiser Name | |
| Company Name   HOMESTAR REAL ESTATE SERVICES, INC. | | Company Name | |
| Company Address   8156 TILLINGHAST LN, GAINESVILLE, VA 20155 | | Company Address | |
| State License/Certification # 4001 007775   State  VA | | State License/Certification # | State |
| Email Address   HOMESTAR2001@AOL.COM | | Email Address | |

Freddie Mac Form 71  March 2009          Page 1 of 1          Fannie Mae Form 1004MC  March 2009

Form 1004MC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Location Map

| | |
|---|---|
| Borrower/Client | CRISCUOLO |
| Property Address | 14416 CLUBHOUSE ROAD |
| City | GAINESVILLE |
| County | PRINCE WILLIAM |
| State | VA |
| Zip Code | 20155-3816 |
| Lender | MARK CRISCUOLO |



# Building Sketch

| | |
|---|---|
| Borrower/Client | CRISCUOLO |
| Property Address | 14416 CLUBHOUSE ROAD |
| City | GAINESVILLE     County  PRINCE WILLIAM     State  VA     Zip Code  20155-3816 |
| Lender | MARK CRISCUOLO |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1900.80 | 1900.80 |
| GLA2 | Second Floor | 1418.40 | 1418.40 |
| | | | |
| | **TOTAL LIVABLE**  (rounded) | | **3319** |

| LIVING AREA BREAKDOWN | | | |
|---|---|---|---|
| Breakdown | | | Subtotals |
| First Floor | | | |
| 32.0 | x | 34.0 | 1088.00 |
| 8.0 | x | 20.0 | 160.00 |
| 20.4 | x | 32.0 | 652.80 |
| Second Floor | | | |
| 20.4 | x | 26.0 | 530.40 |
| 22.0 | x | 34.0 | 748.00 |
| 10.0 | x | 14.0 | 140.00 |
| **6 Calculations Total (rounded)** | | | **3319** |

FROM:
HOMESTAR REAL ESTATE SERVICES, INC.
8156 TILLINGHAST LANE
GAINESVILLE, VA 20155
P(571) 261-3367 F(571) 261-3368
HOMESTAR2001@AOL.COM

| INVOICE | DATE | REFERENCE |
|---------|------|-----------|
| 090513G | 5/7/09 | CRISCUOLO |

TO:
MARK CRISCUOLO
14416 CLUBHOUSE ROAD
GAINESVILLE, VA 20155

| DESCRIPTION | AMOUNT |
|-------------|--------|
| FULL URAR<br>14416 CLUBHOUSE ROAD, GAINESVILLE, VA 20155 | 350.00 |
| LESS PAYMENT RECEIVED | -350.00 |
| DELIVER TO: mcriscuolo@precisionpower.us | |
| Subtotal | $ |
| | $ |
| TOTAL | $ |

THANK YOU FOR YOUR BUSINESS!

UNITED STATES BANKRUPTCY COURT
EASTER DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IN RE:                              :
                                    :
MARK JOSEPH CRISCUOLO               :        Case No. 09-14063-SSM
                                    :        Chapter 13
        Debtor.                     :
_____:

ORDER GRANTING DEBTOR'S MOTION TO DETERMINE
SECURED STATUS OF INDYMAC FEDERAL BANK, SUCCESSOR IN INTEREST TO
MORTGAGEIT, INC. AND TO STRIP LIEN EFFECTIVE UPON DISCHARGE

THIS CASE came for hearing on, of the Debtor's Motion to Determine Secured

Status of IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc. and to Strip

Lien ("Motion"). After reviewing the motion and argument of the parties, it is hereby

        ORDERED:

        1.      The Motion is Granted;

        2.      IndyMac Federal Bank, successor in interest to Mortgageit, Inc.'s interest

shall be treated as an unsecured claim in this Chapter 13 case;

        3.      The real property that is the subject of the Motion is located at 14416

Clubhouse Rd., Gainesville, VA 20155-3816 ("Real Property"), and more particularly

described as follows:

        LOT 5, PHASE 4, SECTION 1, VIRGINIA OAKS, AS THE SAME IS SHOWN ON
        A PLAT ATTACHED TO DEED OF RESUBDIVISION, EASEMENT,
        VACATION AND SUBORDINATION RECORDED IN DEED BOOK 2813,
        PAGE 758, AS CORRECTED IN DEED BOOK 2851, PATE 1665, AMOUNG THE
        LAND RECORDS OF PRINCE WILLIAM COUNTY, VIRGINIA.

4.     The Deed of Trust held by IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc., recorded on December 29, 2006, bearing the instrument no. 200612290180051 among the land records of Prince William County shall be deemed void, and shall be extinguished automatically, without further court order, upon entry of the Debtor's discharge in this Chapter 13 case; provided, however, that the Court reserves jurisdiction to consider, if appropriate, the avoidance of IndyMac Federal Bank, Successor in Interest to Mortgageit, Inc.'s Deed of the Trust prior to the entry of the Debtor's discharge.

ENTERED THIS _____ DAY OF _____, 2009

_____
Steven S. Mitchell
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: Mark Joseph Criscuolo        )
                                    )
                                    )    Case No. 09-14063
                                    )    Chapter   13
             Debtor

## NOTICE OF MOTION

Mark Joseph Criscuolo, by counsel has filed papers with the court to Motion to Determine

Secured status of IndyMac Federal Bank, SII, Mortgageit, Inc. and to strip lien at discharge                                    .

**Your rights may be affected.** **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not wish the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then on or before July 29, 2009                 , you or your attorney must:

      ☒      Send to the parties listed below at least 15 days written notice of a hearing, which may be set on any regularly-scheduled motion day of the judge assigned to the case. If necessary, you may obtain a list of such dates by telephone from the clerk's office. The original and one copy of the notice must be filed with the clerk, accompanied by a motion day cover sheet, a copy of which may be obtained from the clerk. If you are not represented by an attorney, you may instead file with the clerk a written request for hearing. If you mail your request for hearing to the court for filing, you must mail it early enough so the court will **receive it on or before the date stated above.** The address of the clerk's office is as follows:

Clerk of Court
United States Bankruptcy Court
200 S. Washington Street
Alexandria, Virginia 22314

            You will be notified by the clerk of the hearing date and will be responsible for sending notice of hearing to the parties listed below.

      ☒      File with the court, at the address shown above, a written response with supporting memorandum as required by Local Bankruptcy Rule 9013-1(H). **Unless a written response and supporting memorandum are filed and served by the date specified, the Court may deem any opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.** If you mail your response to the court for filing, you must mail it early enough so the court will **receive it on or before the date stated above.** You must also mail a copy to the persons listed below.

X   Attend the hearing scheduled to be held on <u>July 29, 2009</u>                at
    <u>1:30</u>        o'clock <u>p</u> .m. in Courtroom <u>I</u>    , United States Bankruptcy Court,
    200 South Washington Street, Alexandria, Virginia 22314.  **If no timely response has
    been filed opposing the relief requested, the court may grant the relief without
    holding a hearing.**

X   A copy of any written response must be mailed to the following persons:

        X       ~~Martin C. Conway~~
                ~~7926 Jones Branch Drive, Ste. 930~~
                ~~McLean, VA 22102~~


        ⌐


        X       United States Trustee, Region 4
                115 South Union Street, Suite 210
                Alexandria, VA 22314

        If you or your attorney do not take these steps, the court may decide that you do not oppose the
relief sought in the motion or objection and may enter an order granting that relief.


Date: <u>June 2, 2009</u>

                                        Signature, name, address and telephone number
                                        of person giving notice:

                                        ~~Martin C. Conway~~
                                        ~~7926 Jones Branch Drive, Ste. 930~~
                                        ~~McLean, VA 22102~~

                                        Virginia State Bar No. <u>34334</u>
                                        Counsel for <u>Mark Joseph Criscuolo</u>


## Certificate of Service

        I hereby certify that I have this <u>2</u>    day of <u>June</u>                , <u>09</u>   , mailed or hand-
delivered a true copy of the foregoing Notice of Hearing to the parties listed on the attached service list.

                                        /s/ Martin C. Conway