UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
    MARK JOSEPH CRISCUOLO          )    Case No. 09-14063-BFK
                                                )    Chapter 13
                    Debtor           )

**MEMORANDUM OPINION
AND ORDER DISMISSING CASE WITH PREJUDICE**

This case presents the question of the remedies available to the Court in dismissing a Debtor's Chapter 13 case for bad faith. The matter comes before the Court on the Chapter 13 Trustee's Motion to Dismiss the Case with Prejudice (Docket No. 192), and the Debtor's Motion to Dismiss the Case Voluntarily under Section 1307(b) of the Bankruptcy Code (Docket No. 217). Both parties submitted Briefs in support of their arguments. Docket Nos. 220 and 221. The Court heard oral argument on April 3, 2014. For the reasons stated below, the Court will grant the Chapter 13 Trustee's Motion to Dismiss the Case with Prejudice on the terms stated below, and will deny the Debtor's Motion to Dismiss the Case under Section 1307(b).

**Findings of Fact**

*A.    The Debtor's Chapter 13 Filing, and Confirmation of the Debtor's Plan.*

1.    The Debtor filed his Voluntary Petition under Chapter 13 of the Bankruptcy Code in this Court on May 21, 2009.

2.    At the time of the filing, the Debtor represented that he was self-employed, and that his monthly net income was $4,048. Docket No. 20, Schedules I and J ("Current Income of Individual Debtor(s)," "Current Expenditures of Individual Debtor(s)"). In December 2009, the Debtor amended his Schedules I and J, stating that his monthly positive net income had

1

decreased to $891.25, due to home, alimony, and support payments. Docket No. 57, Amended Schedule J.

3. Since the filing of his bankruptcy petition, the Debtor has proposed a total of eight Chapter 13 Plans. The Debtor's first two Plans (Docket Nos. 15 and 59) were denied confirmation. Docket Nos. 37 and 72. The Debtor's Second Amended Plan (Docket No. 76) was conditionally confirmed on April 8, 2010. Docket No. 87. The Debtor's Third Amended Plan (Docket No. 122) was confirmed on April 18, 2012. Docket No. 132.

4. The confirmed Plan called for payments of $397.50 for eight months, $550 for twenty-four months, and $601.44 for thirty-six months, for a total plan funding of $34,430.84. *Id.*, ¶ 1.

5. The Debtor also filed an adversary proceeding against Indymac Mortgage Services as the servicer for One West Bank, the party with a second priority deed of trust against his residence. The adversary proceeding concluded with an Order Granting Default Judgment and Determining One West Bank's lien to be wholly unsecured for purposes of the Chapter 13 case (commonly referred to as a strip-off of the second lien). Adv. Pro. No. 09-01255-SSM, Docket No. 32.

  B.  *The Chapter 13 Trustee's Two Motions to Modify the Confirmed Plan.*

6. The Trustee filed a Motion to Dismiss the case for the Debtor's failure to produce his 2011 tax returns. Docket No. 138. The Trustee withdrew this Motion on July 9, 2012. Docket No. 143.

7. Shortly thereafter, the Chapter 13 Trustee filed a Motion to Modify the Chapter 13 Plan. Docket No. 146. In his Motion, the Trustee asserted that the Debtor's income was 54% higher than the Debtor stated at the time of the confirmation of his Third Amended Plan. The

2

Court granted the Trustee's Motion. Docket No. 159. The Debtor's Fourth Amended Plan (Docket No. 163) was confirmed on December 3, 2012. Docket No. 164. The Order confirming the Fourth Amended Plan required the Debtor to pay $926.32 for five months, and then $1,700 for twenty months. *Id*., ¶ 4. In addition, the Debtor was to pay four additional payments of $2,500 each to the Trustee. *Id*., ¶ 5. The total amount to be paid under this Plan was $65,110. Docket No. 163, ¶ 1.

      C.      *The Trustee's Motion to Dismiss the Case With Prejudice.*

      8.      One year later, on July 31, 2013, the Chapter 13 Trustee filed a Motion to Dismiss the Case with Prejudice or to Modify the Plan. Docket No. 172. In this Motion, the Trustee asserted that the Debtor, acting in bad faith, concealed the fact that he had earned over $1 million in 2012, while the Debtor claimed to have a gross annual income of $150.040.08. *See* Docket No. 163, Schedule I.

      9.      The Court heard evidence on the Trustee's Motion on October 24, 2013. At the hearing, the Debtor testified that, after paying taxes, he spent most of the money on luxury items for himself and his family, including renovations to his home, jewelry for his wife and a membership at a private golf club in Northern Virginia.

      10.      The Court made oral findings of fact and conclusions of law from the bench on October 24th. The Court entered an Order on November 1, 2013, stating its findings that: (1) the Debtor's Amended Schedules filed with his Fourth Amended Plan were materially inaccurate; (2) the Debtor received a $613,625 disbursement from Dynecon, LLC, which was property of the estate under § 1306 of the Bankruptcy Code; (3) the Debtor dealt with his creditors in bad faith by dissipating the funds received from Dynecon, LLC in lieu of paying the funds to his creditors; and (4) this income from Dynecon, LLC constituted a substantial and unanticipated change in the

3

Debtor's financial circumstances, and that a Plan modification was warranted under § 1329 of the Code. Docket No. 183. The Court granted the Trustee's Motion to Modify and ordered that the Debtor file a new plan by November 14, 2013, or the case would be dismissed. *Id.*[1]

11. The Court has afforded the Debtor three additional chances to amend his Chapter 13 Plan. Docket Nos. 185, 189 and 205 (Debtor's Fifth, Sixth and Seventh Amended Plans). None of the three additional Amended Plans was confirmed.[2]

12. The Chapter 13 Trustee filed a Motion to Dismiss the Case with Prejudice, on December 30, 2013. Docket No 192. The Trustee asserts that the Debtor's Amended Plans were filed in bad faith. *Id.*, p. 2.

13. In anticipation of the confirmation of the Debtor's Seventh Amended Plan, the Debtor transferred over $70,000 to the Trustee, to be paid pursuant to the terms of the Plan.

14. The Court held a hearing on the Debtor's Seventh Amended Plan on March 6, 2014. The Trustee announced that he was willing to go forward with confirmation of the Debtor's Plan, but the Debtor withdrew the Plan in open court.

15. The Debtor then filed a Motion to Dismiss the Case under Section 1307(b) of the Bankruptcy Code, on March 24, 2014. Docket No. 215.[3] The Debtor asserts that his right of

---

[1] Four days after the October 24th hearing, the Fourth Circuit issued its opinion in *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013), holding that a post-confirmation inheritance received by the Debtor more than 180 days after the petition date is property of the estate under Section 1306(a) of the Code. The Court's finding that the Dynecon funds are property of the estate is consistent with the Fourth Circuit's holding in *Carroll v. Logan*.

[2] The Seventh Amended Plan would have reversed the effect of the strip-off of the One West second deed of trust lien. The Plan was dependent upon a refinancing of the Debtor's home. The Debtor filed a Motion to Refinance the secured debt against his home. Docket No. 198. The Trustee objected on, among other grounds, the ground that the Debtor misrepresented in his loan application that he had not filed for bankruptcy protection within the past seven years. Docket No. 202. The Debtor filed an Amended Motion to Refinance on February 14, 2014 (Docket No. 206), but withdrew this Motion on March 6, 2014 (Docket No. 212).

[3] On the same day, the Debtor filed another Motion to Dismiss (Docket No. 217), which is a duplicate of Docket No. 215.

4

voluntary dismissal trumps the Trustee's Motion to Dismiss, and that upon dismissal, pursuant to Section 1326(a)(2) of the Bankruptcy Code, the Trustee must return the remaining $72,734.04 in funds to him.

16. The Trustee asserts that the Debtor's bad faith vitiates any right of voluntary dismissal, and provides cause under Section 349(b)(3) for the Court to order that the remaining funds be disbursed to the creditors pursuant to the terms of the (unconfirmed) Seventh Amended Plan. Docket No. 221.

## Conclusions of Law

There are two issues before the Court: (1) whether the Debtor's right to dismiss under Section 1307(b) of the Bankruptcy Code trumps the Chapter 13 Trustee's Motion to Dismiss the Case with Prejudice; and (2) whether the Debtor's bad faith gives the Court cause to order that the Trustee disburse the remaining funds to the creditors pursuant to Section 349(b)(3), instead of returning them to the Debtor under § 1326(a)(2) of the Code. The Court will address each issue, in turn.

**I.    The Debtor's Right to a Voluntary Dismissal.**

The first issue is whether the Debtor's right to dismiss his case under Section 1307(b) of the Bankruptcy Code trumps the Chapter 13 Trustee's Motion to Dismiss the case with prejudice. Section 1307(b) states: "On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." 11 U.S.C. § 1307(b). The Debtor argues that since his case has not been converted under Sections 706, 1112 or 1208, he is entitled to a voluntary dismissal of his case. The Trustee asserts that recent case law from this District provides a bad faith exception to the Debtor's § 1307(b) absolute right of dismissal.

5

For the reasons stated below, the Court agrees with the Trustee.

*A. Marrama v. Citizens Bank of Massachusetts*

In *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), the Supreme Court recognized that through bad faith or fraud, a debtor may forfeit some of his or her rights under the Bankruptcy Code. 549 U.S. 365, 375 (2007). In *Marrama*, the Chapter 7 debtor moved to convert his case to Chapter 13. The Chapter 7 Trustee and a creditor objected on the basis of the debtor's bad faith, because the debtor had misrepresented the value of his property when he filed for bankruptcy. The Supreme Court held that the debtor's right to convert his case under Section 706(a) of the Bankruptcy Code was forfeited by his bad faith.

In its holding, the Court focused in on the sentence in §706(a) which, like § 1307(b), states: "Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a). The Court stated:

> A statutory provision protecting a borrower from waiver is not a shield against forfeiture. Nothing in the text of § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.

*Marrama*, 549 U.S. at 374-75.[4]

In this case, the Court has found the Debtor guilty of fraudulent conduct in hiding and spending his post-petition additional earnings, property of the estate, at the expense of his creditors. This conduct is clearly "atypical" and qualifies as bad faith conduct sufficient to support a dismissal with prejudice, under § 1307(c), based on the *Marrama* standard.[5]

---

[4] The Court also pointed out that the debtor did not have an absolute right to conversion, since he would not have qualified to file bankruptcy under Chapter 13. 549 U.S. at 372-73.

[5] There is no question that there is cause for dismissal under Section 1307(c), including unreasonable delay by the debtor that is prejudicial to creditors, and the denial of confirmation of a plan and denial of a request for additional

6

*B. In re Mitrano and In re Abebe.*

The Eastern District of Virginia has applied this standard under very similar circumstances. In *In re Mitrano*, 472 B.R. 706 (E.D. Va. 2012), the district court held that the right to dismissal upon request under § 1307(b) of the Code is limited to good-faith debtors. 472 B.R. at 710. In *Mitrano*, the United States filed a motion to convert the case from Chapter 13 to Chapter 7 for, among other reasons, the debtor's bad faith in his bankruptcy and in delaying his creditors in their efforts to recover from him (particularly the Debtor's ex-wife, to whom he owed substantial domestic support obligations).[6] The bankruptcy court found that Mr. Mitrano, who had provided inaccurate information in his schedules, had acted in bad faith, and granted the government's motion to convert the case, despite Mr. Mitrano's argument that he was entitled to a voluntary dismissal of his case.

The district court found that even "[a]ssuming that Mitrano made a timely and adequate request for dismissal, conversion was nevertheless appropriate. Tile 11 U.S.C. § 1307(c) allows the court to convert a Chapter 13 case to a Chapter 7 case 'for cause.'" *Id.* at 709. The district court stated further:

> In light of the bankruptcy court's power to "prevent an abuse of process," there is no principled reason to allow bad-faith debtors access to dismissal under § 1307(b) . . . . "[T]he inherent power of every federal court to sanction abusive litigation practices similarly persuades the Court that the reasoning in *Marrama* should apply to the case of a Chapter 13 debtor seeking dismissal under § 1307(b)."

*Id.* at 711 (quoting *Marrama*, 549 U.S. at 376) (internal citations omitted).

A second case from the Eastern District of Virginia, *Gorman v. Abebe*, 2012 WL

---

time to file an amended or modified plan. 11 U.S.C. § 1307(c)(1) and (5).

[6] Mr. Mitrano was sentenced to 24 months imprisonment, 1 year of supervised release, a $100 special assessment, and $517,406.32 in restitution, for willful failure to pay child support. *In re Mitrano*, 472 B.R. 706, 707 n. 2 (E.D. Va. 2012).

6965718 (E.D. Va. 2012), applied the same principles. In *Abebe*, the Chapter 13 debtor attempted a short sale of her real property, in which it was discovered that she was to receive $25,000 of the proceeds. The Chapter 13 Trustee came to an agreement with the debtor, by which she would receive $6,000 from the short sale, and leave the remaining $19,000 for distribution to her creditors. Nine days after the sale, the debtor moved for a voluntary dismissal of her case under § 1307(b). The Court granted the debtor's Motion. Case No. 11-11374, Docket No. 79. The Trustee moved to vacate the dismissal, but this Court denied his Motion, finding that §1307(b) provided an absolute right. *Id.*, Docket No. 88. The Trustee appealed this Court's decision to the district court. *Id.*, Docket No. 90.

The district court reversed, holding that the right to a voluntary dismissal is not absolute, and that Section 1307(b) is only absolute as to good-faith debtors. *Abebe*, 2012 WL 6965718, at *2. Citing *Marrama*, the district court held that "[w]here a debtor has tried to take advantage of the bankruptcy forum, he is no longer entitled to seek its benefits, and the bankruptcy judge has the authority to ensure that 'abusive litigation practices' are avoided." *Id.*

   *C. Law v. Siegel*

On March 4, 2014, the Supreme Court issued its decision in *Law v. Siegel*, 134 S.Ct. 1188 (2014). The Debtor argues that *Law v. Siegel* limits the holding in *Marrama*, and consequently, the District Court's holdings in *Mitrano* and *Abebe*. Docket No. 220, Debtor's Brief, p. 7. While, to some extent, *Law v. Siegel* did limit the breadth of *Marrama*, the Court finds that the Supreme Court's holding in *Law v. Siegel* was not so expansive as to eviscerate the District Court's holdings in *Mitrano* and *Abebe*.

In *Law v. Siegel*, the Supreme Court found that the bankruptcy court exceeded its authority under § 105 of the Code when it surcharged the Chapter 7 debtor's homestead

8

exemption for bad faith behavior, something explicitly prohibited by § 522 of the Code. *Law*, 134 S.Ct. at 1195. In its conclusion, the Court stated, "[o]ur decision today does not denude bankruptcy courts of the essential 'authority to respond to debtor misconduct with meaningful sanctions.'" *Id.* at 1198.

This Court retains the authority to sanction a debtor's bad faith conduct so long as such sanctions do not contravene any explicit provisions of the Bankruptcy Code. There is certainly nothing in Section 1307(b) that prohibits a dismissal on terms and conditions, including a proscription on re-filing a case for a defined period of time. Accordingly, the Court finds that dismissal with prejudice is appropriate here, in the face of the debtor's bad-faith conduct. The Trustee's Motion to Dismiss with Prejudice will be granted, and the Debtor will be prohibited from filing a bankruptcy petition for a period of one year from the date of this Order.

## II.     The Debtor's Right to a Return of the Remaining Funds

The second issue concerns the disposition of the remaining funds. Under the Debtor's confirmed Plan, the Debtor has over-paid the Trustee by something on the order of $70,000. The Debtor's Seventh Amended Plan, under which the $70,000 would have been distributed, was never confirmed. The Debtor argues that the Court must order the Trustee to return the $72,734.04 in remaining funds to the Debtor, pursuant to Section 1326(a)(2) of the Bankruptcy Code, which states:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. *If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor*, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326(a)(2) (emphasis added).

9

The Trustee asserts that the Debtor's bad faith negates the Debtor's right to a return of the funds, and that Section 349 of the Bankruptcy Code allows the Court to order that the Trustee disburse the funds to the Debtor's creditors, instead of back to the Debtor. Section 349(b)(3) provides: "*Unless the court, for cause, orders otherwise*, a dismissal of a case other than under section 742 of this title . . . (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3) (emphasis added). The Trustee argues, not without some force, that this is a paradigm case for "ordering otherwise" under Section 349.

For the reasons stated below, the Court is constrained to agree with the Debtor on this issue.[7]

   *A. The Tension between § 1326(a)(2) and § 349(b)(3)*

Section 1326(a)(2)'s third sentence, by its terms, applies where a plan has not been confirmed. The courts generally have held that Section 1326(a)(2) applies only to payments paid to the trustee after the filing of the case, but before confirmation of a plan. These courts have held that Section 1326(a)(2) is inapplicable to funds paid to the trustee after a plan has been confirmed. *See*, *e.g.*, *In re Tran*, 309 B.R. 330, 336 (9th Cir. BAP 2004), *aff'd*, 177 Fed.Appx. 754 (9th Cir. 2006) ("By its terms § 1326(a)(2) does not pertain to funds received by a trustee *after* confirmation of a Chapter 13 plan.") (quoting *In re Boggs*, 137 B.R. 408, 410 (Bankr. W.D.

---

[7] One solution might have been for the Court to convert the case to Chapter 7. *Gorman v. Abebe,* 2012 WL 6965718, at *3 (E.D. Va. 2012) ("there is nothing to prevent a bankruptcy court from converting a debtor's Chapter 13 case to a Chapter 7 case *sua sponte*.") Section 348(f)(2) provides that the "[i]f the debtor converts a case under Chapter 13 of this title to a case under another chapter under this title in bad faith," then property of the estate shall consist of property as of the date of the conversion, which means that the funds would go to the Chapter 7 Trustee for distribution to the creditors. The problem here is that Section 348(f)(2) is limited to cases where the debtor converts his or her case to Chapter 7 in bad faith. It does not appear to apply where the Court converts the case to Chapter 7 *sua sponte*. Further, absent a successful challenge to the Debtor's discharge under Section 727 of the Code, he would be entitled to a discharge. On balance, the Court finds that the creditors are better served by a dismissal with prejudice, than by a conversion of the case to Chapter 7.

Wash. 1992) (emphasis in original); *In re Clements*, 495 B.R. 74, 81 n. 11 (Bankr. E.D. Pa. 2013) ("Section 1326(a)(2) does not address the disposition of any plan payments the chapter 13 trustee receives from the debtor *after confirmation* of the plan.") (emphasis in original); *In re DeSimone,* 2013 WL 6328751, at *2 (Bankr. D.N.J. 2013) ("the third sentence of section 1326(a)(2) means what it says and should be read to provide that when a Plan has not been confirmed, payments are to be returned to the debtor after deducting any unpaid claim allowed under Section 503(b)"); *In re Hamilton*, 493 B.R. 31, 35-36 (Bankr. M.D. Tenn. 2013); *In re Williams*, 488 B.R. 380, 385 (Bankr. N.D. Ill. 2013); *In re Parker*, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009).

Section 349(b)'s basic purpose is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *In re Tran*, 309 B.R. at 334 (quoting *In re Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985)). While Sections 349(b)(3) and 1326(a)(2) of the Code appear to be in conflict with each other, dictating different results (where the court finds cause), Section 349 by its terms applies only where a plan has been confirmed. As one court has noted:

> [S]ection 349(b)(3) provides that if a bankruptcy case is dismissed, the trustee shall return the property of the estate to the debtor unless the court orders otherwise for cause, but section 1326(a)(2) provides that when the plan is not confirmed, the trustee must deduct any unpaid administrative expenses allowed under section 503(b) before returning the property to the debtor.

*In re Matthews*, 2012 WL 3263599, at *2 (E.D. Pa. 2012) (emphasis in original).

The Court finds that the language of § 349(b)(3) "cannot undo" the plain language of § 1326(a)(2). *See In re Parrish*, 275 B.R. 424, 429 (Bankr. D.D.C. 2002). "When read in conjunction with § 1326(a)(2), § 349(b)(3) is unambiguous. It revests the debtor with the funds subject to whatever restrictions § 1326(a)(2) imposes. Sections 349(b)(3) and 1326(a)(2) can and

11

ought to be read in a way that avoids any conflict and that gives force to both provisions." *Id*. at 427. Section 349(b)(3) "must be read in conjunction with § 1326(a)(2)." *In re Darden*, 474 B.R. 1, 8 (Bankr. D. Mass. 2012) (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd*., 484 U.S. 365, 371 (1988) ("'Statutory construction . . . is a holistic endeavor'" where isolated provisions ought to be interpreted to produce "'a substantive effect that is compatible with the rest of the law.'")).

In the case at hand, although there is a confirmed plan (Docket No. 164, Order Confirming Fourth Amended Chapter 13 Plan), there is no confirmed plan that would direct the distribution of the $70,000 now held by the Trustee. The Trustee and the Court have no confirmed plan terms by which to distribute the remaining monies. Consequently, Section 1326(a)(2) controls in this case with respect to the $70,000.

Further, the Court finds that there is no provision of the Bankruptcy Code that specifically would allow the Court to order that the Trustee pay this money to anyone other than the Debtor. As the Supreme Court held in *Law v. Siegel*:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code…" Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere… Courts' inherent sanctioning powers are likewise subordinate to valid statutory directives and prohibitions… We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code.

134 S.Ct. at 1194 (footnote and citations omitted).

The Trustee relies principally on the *Abebe* case for the relief he seeks. The critical differences between this case and *Abebe,* though*,* are that in *Abebe*: (a) there was a confirmed plan (Case No. 11-11374-BFK, Docket No. 58) ; and (b) there was an Order of the Court

12

specifically directing that $19,000 of the proceeds from the sale of the Debtor's property be turned over to the Trustee. *Id.*, Docket No. 76. The lack of a confirmed plan under which the $70,000 could be distributed in this case is not an academic question – it is not clear to the Court, for example, whether the second trust lender's (One West's) claim would be treated as a unsecured claim (because its lien has been stripped off ) or as a secured claim (because, when the case is dismissed, the operation of Section 349(b) will cause its lien to be reinstated). Although distributing the funds to the creditors may seem to be the fair thing to do, *Law v. Siegel* teaches us that the Court can't simply carry out what seems fair, when faced with a statutory imperative (here, Section 1326(a)(2)) to the contrary.

Accordingly, the Court finds that the plain language of § 1326(a)(2) is controlling in this case.

*B. Allowed Administrative Expenses and Plan Payments under the Confirmed Plan*

Section 1326(a)(2) provides that upon dismissal, the funds are to be returned to the Debtor "after deducting any unpaid claim allowed under section 503(b)." Accordingly, the Court will order the return of the funds to the Debtor after payment of any allowed administrative expenses, including Mr. Gorman's statutory commission and the allowed fees and expenses of Debtor's counsel.

Section 1326(a)(2) also provides: "If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable." As Judge Teel stated in *Parrish*, "unless dismissal vacates the effectiveness of a confirmed plan (and nothing in the Bankruptcy Code says it does), § 1326(a)(2) requires the trustee to disburse those funds in accordance with the confirmed plan." *In re Parrish*, 275 B.R. at 429. An interpretation that dismissal vacates the effectiveness of a confirmed plan "would allow the debtor to take all the

13

money that was earmarked for creditors and run after tying creditors' hands by reason of the confirmed plan having been in place." *Id.* The implicit termination of the debtor's obligation to make future plan payments, should not render the plan ineffective as to past payments. "The debtor should not have both the benefit of creditors' enforced collection rights having been stayed by reason of a confirmed plan, and the right to receive undisbursed plan funds on dismissal. Congress could not have intended such an inequitable result." *Id.* at 433. *See also In re Pegues*, 266 B.R. 328, 332 (Bankr. D. Md. 2001) (ordering the disbursement of unpaid plan payment funds to creditors after converting the case from Chapter 13 to Chapter 7). *See generally*, *In re Bell*, 248 B.R. 236 (Bankr. W.D.N.Y. 2000); *In re Hardin*, 200 B.R. 312 (Bankr. E.D. Ky.1996); *In re Halpenny*, 125 B.R. 814 (Bankr. D. Haw. 1991); *In re Galloway*, 134 B.R. 602 (Bankr. W.D. Ky. 1991); *In re Radebaugh*, 125 B.R. 797 (Bankr. W.D. Mo. 1991).

Here, there is a confirmed Plan, the Debtor's Fourth Amended Plan. The Court will order that the remaining funds be paid to the creditors in accordance with the terms of the Fourth Amended Plan; specifically, the amount of any monthly plan payments that have accrued as of the date of this Order shall be paid by the Chapter 13 Trustee to the creditors, pro rata, as though the Debtor had paid the required monthly payments under the Fourth Amended Plan through the date of this Order (but not thereafter).

For the foregoing reasons, the Court finds that the Trustee must return the remaining funds to the Debtor, after the payment of: (a) any allowed administrative expenses under § 503(b); and (b) any unpaid payments under the confirmed Fourth Amended Plan.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED:**

1. The case is dismissed with prejudice to re-filing under any chapter of the Bankruptcy Code in this or any other court for a period of <u>1 year</u> from the entry of this Order.

2. The Chapter 13 Trustee shall return the remaining $72,734.04 in funds to the Debtor, after payment of: (a) any allowed administrative expenses under § 503(b), and (b) any unpaid payments under the confirmed Plan (Docket No. 163).

3. The Clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: May 12 2014  
Alexandria, Virginia

/s/ Brian F. Kenney  
Brian F. Kenney  
United States Bankruptcy Judge

May 13 2014

<u>Copies to:</u>  
Mark Joseph Criscuolo  
14416 Club House Road  
Gainesville, VA 20155  
Debtor

Martin C. Conway, Esquire  
Martin Conway Law Firm PC  
12934 Harbor Drive  
Suite 108  
Woodbridge, VA 22192  
Counsel for the Debtor

Thomas P. Gorman, Esquire  
300 N. Washington St. Ste. 400  
Alexandria, VA 22314  
Chapter 13 Trustee